**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FRESH FUND I, LLC, JIM 'N NICKS** | ) | _____ |
| **MEMPHIS I, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

## I.   INTRODUCTION

Plaintiff, John Smith, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the Jim 'N Nicks environment to inidividuals with disabilities. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the establishment to be readily accessible to and usable by individuals with disabilities.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.      Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the

"ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.      Venue is proper in this Court, the United States District Court for the Western District of Tennessee, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Western District of Tennessee.

3.      Plaintiff, John Smith, was diagnosed with diabetes forty-four years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith requires a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Smith, is accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102.

4.      Defendant, Jim N Nicks Memphis I, LLC, (hereinafter, "Jim 'N Nicks"), is a corporation that is conducting business within the State of Tennessee sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Jim N Nicks Memphis I, LLC, "operates" the Jim 'N Nicks restaurant located at 2359 N Germantown Pkwy, Cordova, TN 38016. 42 U.S.C. § 12182. The Jim 'N Nicks restaurant is a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.      Defendant, Fresh Fund I, LLC, (hereinafter "Fresh"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Tennessee sufficient to create both general and specific in personam jurisdiction. Upon information and belief

from the property records on the Shelby County Geographical Information System, Fresh Fund I, LLC, "owns" the real property and its improvements located at 2359 N Germantown Pkwy, Cordova, TN 38016. The restaurant is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a restaurant providing Southern barbeque to the public. Accordingly, it is covered by the ADA and must comply with the Act.

6.      All events giving rise to this lawsuit occurred in the Western District of Tennessee and the Defendants are citizens thereof.

7.      Plaintiff John Smith travels from his home in Muscle Shoals, Alabama to Memphis, Tennessee at least once a year and usually more often than that. Mr. Smith enjoys going to Memphis because he likes the city and all it has to offer. Mr. Smith likes to dine at Jim 'N Nicks specifically and enjoys the traditional Southern barbeque restaurants. He intends to continue going to Jim 'N Nicks because he enjoys food and service. Plaintiff will return not only to dine at Jim 'N Nicks, but also to confirm compliance with the ADA by the Defendants. Plaintiff cannot provide a specific time and date upon which he will return to the restaurant because he has not and should not be expected to engage in such definite future planning. Plaintiff, like other restaurant customers, often patronizes a restaurant establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the restaurant.

8.      Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of his disabilities.

9.     Plaintiff accordingly, has Article III standing to pursue this case because (1) he is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendants' restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury, by being denied access to Jim 'N Nicks by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendants' denial of the use of Jim 'N Nicks for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 18.

## II.     PLAINTIFF'S CLAIMS

### ADA, Title III

10.     On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

11.     Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a restaurant providing Southern barbecue to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
*(Architectural Barriers)*

**Defendants' Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

12.    Plaintiff is informed and believes based on publicly available information that the building in which Jim 'N Nicks is located at 2359 N Germantown Pkwy, Cordova, TN 38016 was first constructed in 2006.

13.    Plaintiff is further informed and believes based on publicly available information that the Jim 'N Nicks restaurant located at 2359 N Germantown Pkwy, Cordova, TN 38016 underwent alterations and/or improvements after 2006.

14.    The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* §

36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15.     New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility*

*does not comply with the 1991 Standards, the 2010 Standards are applicable*. See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16.     For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

17.     The Defendants have discriminated, and continue to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Jim 'N Nicks in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

18.     As described herein,  prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' establishment. Plaintiff's access was inhibited by each of the architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form in which the ADA was enacted to guard against.

19.     Plaintiff has definite plans to return to Jim 'N Nicks in the future. He will return to Jim 'N Nicks in both Fall 2018 and Spring 2019 both to eat and enjoy the Southern barbecue restaurant, and to see if Jim 'N Nicks has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so even when Jim 'N Nicks is repaired, because Jim 'N Nicks is an enjoyable place. Plaintiff certainly would not want to stop going when Jim 'N Nicks is repaired and its practices are modified, which gives him more incentive to go. Also, and importantly, the barriers are not only created by construction issues, but are also created by human activity, based on the way Defendants' employees at the establishment use the physical architectural elements of the facility. The barriers created by human activity should be reviewed and maintained continuously, to be sure Defendants' management and employees continue to act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and, as a result, Plaintiff will be discriminated against by Defendants on the basis of his disabilities. The Eleventh Circuit held in _Houston v. Marod Supermarkets_, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "_there is a 100% likelihood that plaintiff… will suffer the alleged injury again when plaintiff returns to the store_." Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

20.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

21.     Plaintiff has been from the parking lot to the entrance,  to and into the restrooms, from the restrooms to the dining and bar areas, and throughout circulation paths as more particularly described herein. More specifically, Defendants' facility violates the ADA in particular but not limited to:

**A.** Defendants provide a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fail to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

    **(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by inidividuals with disabilities which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and their associated elements as unusable by individuals with disabilities;

    **(2)** The parking area fails to maintain the required number of parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access

aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required number of parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by people with disabilities;

**(4)** The parking area fails to maintain the required number of parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the ground surface measured to the bottom of the sign;

**(5)** The parking area fails to maintain the required number of parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and adjacent access aisles are designed or otherwise maintained in a way so that parked cars and vans, , cannot obstruct the required clear width of adjacent accessible routes and render the parking spaces as unusable by people with disabilities;

**B.** Defendants provide a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails

to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for individuals with disabilities which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance. This has the discriminatory effects of rendering the parking spaces and associated elements as unusable by individuals with disabilities;

(2) The parking area fails to maintain the required number of van accessible parking spaces, including associated access aisles, in operable condition in compliance with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

(3) The parking area fails to maintain the required number of accessible van parking spaces, including access aisles, in operable condition by

conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by individuals with disabilities;

**(4)** The parking area fails to maintain the required number of accessible van parking spaces, including an adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the ground surface measured to the bottom of the sign;

**C.** Defendants provide dining surfaces disbursed throughout the establishment for the consumption of food or drink at the outdoor dining area for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation, including but not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to the accessible route to the dining surfaces

which has the discriminatory effects of rendering the outdoor seating spaces and associated elements as unusable by individuals with disabilities;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished floor, which includes the required 30 inches of clear dining surface so that the surface does not prohibit individuals with disabilities from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**D.** The floor mats throughout the Defendants' establishment fail to be maintained in conformance with the ADA Standards for Accessible Design so that the mats are stable, firm, or otherwise secured to the floor;

**E.** Defendants provide a hostess counter for able-bodied individuals to be seated at a table and otherwise receive services that are provided at each counter but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **(1)** There is not at least one of each type of hostess counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities. This has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by individuals with disabilities;

    **(2)** There is not at least one of each type of hostess counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with §403;

    **(3)** Defendants fail to maintain the required clear floor space at the counter so that the floor space is at least 48 inches long x 30 inches wide and

maintained adjacent to the 36-inch minimum length of counter that is otherwise accessible to and usable by individuals with disabilities;

(4) There is not  at least one of each type of hostess counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by individuals with disabilities which includes maintaining a clear floor or ground space complying with §305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space underneath the counter complying with §306 and clear floor or ground space complying with §305 positioned for a forward approach to the counter;

(5) There is not at least one of each type of hostess counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and associated benefits and services as unusable by inidividuals with disabilities;

(6) There is not at least oe of each type of hostess counter that is maintained in operable condition with the ADA Standards for Accessible Design so that

the accessible counter extends the same depth as the non-accessible portion of the counter;

**(7)** Defendants fail to maintain the accessible features of the hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

**F.** Defendants provide several types of dining surfaces disbursed throughout the restaurant indoor bar for the consumption of food or drink at the indoor bar for able-bodied individuals, but fail to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and associated elements as unusable by individuals with disabilities;

**(2)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition in compliance with

the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished floor, which includes the required 30 inches of clear dining surface so that the surface does not prohibit individuals with disabilities from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**G.** Defendants provide several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes standard booth dining surfaces and high-top dining surfaces for able-bodied individuals, but fail to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** There is not at least 5% of each type of seating and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and associated elements as unusable by individuals with disabilities;

**(2)** There is not at least 5% of each type of seating and standing spaces disbursed throughout the indoor dining area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating and standing spaces disbursed throughout the indoor dining area that are maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition in compliance with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished floor, which includes the required 30

inches of clear dining surface so that the surface does not prohibit individuals with disabilities from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**H.** Defendants provide a restroom for able-bodied individuals, but fails to afford individuals with disabilities the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain signage in conformance with the ADA Standards for Accessible Design so that the international symbol of accessibility is designating and directing individuals with disabilities to the accessible restrooms;

**(2)** Defendants fail to maintain signage in conformance with the ADA Standards for Accessible Design so that the international symbol of accessibility is properly mounted on the latch side of the door to designate and direct individuals with disabilities to the accessible restrooms;

**(3)** Defendants maintain items in the maneuvering clearance at the restroom door which has the discriminatory effect in practice of prohibiting individuals with disabilities from the full and equal opportunity to maneuver independently throughout the restroom;

**(4)** There is not at least one toilet compartment that is maintained or configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals

with disabilities including the maneuvering clearance to approach the compaartment, clear floor space at the compartment door, and other design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by individuals with disabilities;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are usable by inidividuals with disabilities;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface being 17-19 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a 42 inch long grab bar that is

located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab bar 33-36 inches above the finished floor;

(8) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser and its operable parts comply with the applicable standards and do not obstruct the gripping surface of the grab bar;

(9) The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the water closet and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

(10) The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards and is otherwise located 7-9 inches from the front of the water closet;

**(11)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a door and associated hardware in an accessible and usable condition by individuals with disabilities;

**(12)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**I.** Defendants provide a lavatory in the restroom for able-bodied individuals, but fail to afford individuals with disabilities an equal opportunity to benefit from a goodor service; which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which has the discriminatory effect of rendering the lavatory sink and associated elements as unusable by individuals with disabilities;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by individuals with disabilities;

**(4)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the water and drain pipes under the sink are insulated or otherwise configured to protect against contact;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(7)** The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of two hand operation, tight grasping, twisting, and/or pinching of the wrist;

**(8)** Defendants fail to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

**J.** The baby changing table fails to be maintained in a usable condition so that the table and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist;

22.     To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

24.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to provide equal use of its facilities, services and benefits to individuals with disabilities.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

25.     Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

26.     The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

27.     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different

or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, inidividuals with disabilities must receive equal benefits as the individuals who are not disabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to individuals who are not disabled, thus relegating persons who use wheelchairs "to the status of second-class citizens."  See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

28.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. § 12101(a)(5).

29.     To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

30.     By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

31.     For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish individuals with disabilities the full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation is prohibited from having a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> "*A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering a public accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility*

*requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendant entity's goods, services and privileges."*

**Defendants' Failed Practices and Lack of Policies Are Discriminatory**

32.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

33.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to inidividuals with disabilities. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing individuals with disabilities from realizing the full and equal enjoyment of the goods and services the public accommodation offer to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

34.     As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiff. Defendants will continue that discrimination forever until enjoined

as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35.     Defendants either have no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36.     Defendants' use of the establishment, and the practices at the restaurant, literally creates barriers and in so doing denys Plaintiff the full and equal enjoyment of the establishment. Those practices include:

A. Defendants make the hostess counter inaccessible for use by guest with disabilities by failing to provide either a parallel or a forward approach to the counter, which means Plaintiff cannot fully and equally use the counter in the same way as individuals without disabilities, because individuals who are not disabled are able to use the counter to interact with the hostess;

B. Defendants' seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates individuals with disabilities resulting in an experience that is not the same experience that is afforded to able-bodied individuals. Individuals with disabilities are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to choose to sit in all areas that are available to able-bodied individuals to enjoy the Jim 'N Nicks dining experience;

**C.** Defendants fail to provide ADA accessible seating tables outside, which means Plaintiff cannot have access or dine in Jim 'N Nicks outside dining area as compared to customers without disabilities;

**D.** Defendants fail to provide ADA accessible bar seating inside, which means Plaintiff cannot have access to or dine in this area as compared to individuals without disabilities;

**E.** Defendants fail to provide ADA accessible seating tables intside, which means Plaintiff cannot have access to or dine in this area as compared to individuals without disabilities;

**F.** Defendants make their toilet facilities inaccessible for use by individuals with disabilities by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom and all of its elements and fixtures, or move into and throughout the restroom, whereas individuals who are not disabled are able to independently use the restrooms;

**G.** Defendants' policies, practices, and procedures are conducted without regard to individuals with disabilities;

37.    As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

38.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing practice, both implicitly and explicitly,  is to remove ADA Title III architectural barriers only upon demand by individuals with disabilities.

39.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or have failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at their facility as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A).

40.     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

41.     To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

42.     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III of the ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' establishment; (2) Defendants will provide inidividuals with disabilities, including those with mobility impairments, full and equal use and enjoyment of the facility;  (3) Defendants will modify their practice of making ADA Title III architectural barrier

remediations only upon demand by individuals with disabilities.

43.     Fresh Fund I, LLC., "owns" the real property and improvements located at 2359 N Germantown Pkwy, Cordova, TN 38016, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as described above.

44.     Jim N Nicks Memphis I, LLC, "operates" the Jim 'N Nicks restaurant located at 2359 N Germantown Pkwy, Cordova, TN 38016, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as described above.

45.     The ADA has been in effect over twenty-five (25) years. Defendants are aware of their obligation to comply with the ADA Title III, which requires modifications in policies, practices, and procedures. 42 U.S.C. §12182(b)(2)(A)(ii).

46.     Plaintiff, herein, provides sufficient notice of his demands for an alteration in Defendants' policies, practices, and procedures.

47.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

48.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *(Denial of Full and Equal Enjoyment)*

**49.**     Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

**50.**     42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**51.**     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**52.**     Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs*

*the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

53.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

54.    The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

55.    The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

56.    Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and

the regulations promulgated thereunder.

57.     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

58.     The Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish to individuals with disabilities the *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

59.     The keystone for this analysis is Defendants *must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience*. *Spector v.  Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v.  Walt Disney World Company*, 685

F.3D 1131, 1135 (9th Cir. 2012).

60.    Plaintiff, John Smith, was denied full and equal access to Jim 'N Nicks. Plaintiff specifically and definitely wants to return to the Defendants' establishment to enjoy the Southern barbecue that is the Jim 'N Nicks experience. However, Plaintiff wants to be afforded the same level of service that is offered to individuals who are not disabled. However, Defendants have failed to provide to Plaintiff an equal level of service as follows: Defendants' failure to provide Plaintiff the same outdoor dining experience by Defendants' use of their outdoor seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates individuals with disabilities to an experience that is not the same experience that is afforded to able-bodied individuals. Unlike individuals who are not disabled, individuals with disabilities are forced to sit at one type of table or facing the wall, or are otherwise outright excluded from the "opportunity" to choose to sit anywhere else that able-bodied individuals are able to sit and enjoy the outdoor dining experience; Defendants failed to provide an accessible seating area for individuals with disabilities, which means Plaintiff cannot independently use and dine in the Defendants' outdoor seating area; Defendants failed to provide an equal experience by making it nearly impossible for individuals with disabilities to access the hostess counter at Jim 'N Nicks, while individuals without disabilities can fully and independently access the counter and services provided there; Defendants have failed to provide Plaintiff the same indoor dining experience by the use and design of its indoor seating arrangements which exclude or segregate individuals with disabilities by providing them with a different, unequal dining experience as compared to the experience and choices provided to individuals without disabilities, because individuals with disabilities are excluded or segregated by being forced to sit at one type of table

or facing the wall, whereas, individuals without disabilities have the "opportunity" to enjoy their dining experience by choosing any available seat; Defendants failed to provide an accessible bar seating area for individuals with disabilities, which means Plaintiff cannot independently use and dine at the indoor bar seating area; Defendants failed to provide an accessible restroom for individuals with disabilities, which means that, unlike the able-bodied, inidividuals with disabilities are challenged or denied the opportunity to independently use the restroom and its fixtures and elements and move throughout the restroom; Defendants' continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Jim 'N Nicks makes Plaintiff dependent on family or an independent third party which is not the same dining experience that Jim 'N Nicks affords to individuals who are not disabled. The foregoing failures by Defendants inhibited Plaintiff from having the same experience that individuals who are not disabled have when at Jim 'N Nicks.

61.     In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as individuals who are not disabled do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

62.     The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. §

302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to individuals who are not disabled, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

63.    Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated inidividuals with disabilities from the individuals without disabilities. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against individuals with disabilities, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

64.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Jim 'N Nicks.

65.     Defendants' conduct and Defendants' unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

66.     Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to fail to maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

67.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

68.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(a)**
***(Failure to design and construct facility for ADA compliance)***

69.     Plaintiffs incorporate by reference and reallege all the paragraphs above.

70.     42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

71.     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as individuals who are not disabled do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

72.     To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id*.

73.     As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible*. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

74.     To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

75.     Fresh Fund I, LLC, "owns" the real property and its improvements in which Jim 'N Nicks is located and was directly involved in the design and/or construction of the restaurant, which was constructed and/or altered long after the ADA new construction Standards became effective January 26, 1993.

76.     Jim N Nicks Memphis I, LLC, "operates" the Jim 'N Nicks restaurant located at 2359 N Germantown Pkwy, Cordova, TN 38016, and at all relevant times was and is directly involved in the designing and/or construction of the applicable facility for first use after January 1993.

77.     Defendants were and are required to design and construct Jim 'N Nicks to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *its facility to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct their establishment in compliance with the ADA during planned alterations as described throughout this Complaint.

78.     According to Defendants' own publicly available information, Defendants chose to design their facility in a way that is not ADA Title III compliant. Defendants literally strategically design, construct and maintain their facility without any regard to inidividuals with disabilities. Defendants' systematic design of their facility fails to afford individuals with disabilities the same experience that is afforded to individuals without disabilities.

79.     To date, the Defendants' discriminating actions continue.

80.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

81.     Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendants on Counts One through Four and requests the following injunctive and declaratory relief:

1.      That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act;

2.      That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.      That the Court enter an order, in accordance with Count Two, directing the

Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make their business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Jim 'N Nicks experience and to the use of the establishment, and further order Defendants to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the experience that is offered to individuals who are not disabled, as stated in Count Three;

5. That the Court enjoin the Defendants to remediate Jim 'N Nicks to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

6. That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

7. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 31st Day of August, 2018.


/s/ *Pshon Barrett*

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*


/s/ *Bradley D. McAdory*

**Bradley D. McAdory**
BPR # TN-018112
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 31st day of August, 2018 to the following:

**FRESH FUND I, LLC**
Attn.: Registered Agent
1309 Briarville Rd, Ste 201
Madison, TN 37115

**JIM N NICKS MEMPHIS I, LLC**
C/O: Corporation Service Company
Attn.: Registered Agent
2908 Poston Ave
Nashville, TN 37203

/s/ *Pshon Barrett*

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*